THE NASHVILLE, CHATTANOOGA & ST. LOUIS RAILWAY v. J. T. DALE et al.

No. 13,349.   (74 Pac. 596.)

SYLLABUS BY THE COURT.

LIMITATION OF ACTION—*When the Statute Begins to Run in Tort.* A railway company which held goods in its warehouse for a consignee at the place of their destination was induced by the wrongful act of the consignor to deliver them to a person other than the owner. *Held,* that the statute of limitations began to run on the cause of action existing in favor of the railway company against the wrong-doer (the consignor) at the time his tortious act was committed, and not at a later time when the company was compelled to pay to the owner and consignee the value of the goods.

Error from Sedgwick district court; D. M. DALE, judge. Opinion filed December 12, 1903. Affirmed.

*Smyth & Helm,* for plaintiff in error.

*Houston & Brooks,* for defendants in error.

The opinion of the court was delivered by

SMITH, J. : In September, 1896, the Dale & Nessly Milling Company, of Wichita, shipped a car-load of flour to Atlanta, Ga., and consigned the shipment to itself. At the same time the milling company drew

a draft with bill of lading attached on the Southern Flour and Grain Company, of Atlanta, through the Fourth National Bank of Wichita, for $360.32. The bank forwarded the draft and bill of lading to its correspondent in Atlanta, with instructions to deliver them to the flour company upon payment of the draft. The Southern Flour and Grain Company paid the draft and took up the bill of lading, and the amount was remitted to the Wichita bank. The flour company verbally notified an agent of plaintiff in error (the railway company on whose line the flour was carried into Atlanta) that it was the owner of the flour, and requested that it be unloaded and placed in the warerooms of the railway company, which was done. The flour remained in the freight-depot of plaintiff in error for several weeks, which fact came to the knowledge of defendants in error, Dale & Nessly and the Fourth National Bank. They thereupon instructed the railway company to deliver the flour to the Atlanta Brokerage Company, well knowing that the Southern Flour and Grain Company owned it. The railway company, having no record of the verbal notice from the Southern Flour and Grain Company, and believing that Dale & Nessly and the Fourth National Bank were the only parties interested in the flour, and relying on the orders from them, delivered the flour to the Atlanta Brokerage Company.

On December 6, 1896, after the delivery of the flour to the Atlanta Brokerage Company, the Southern Flour and Grain Company presented to the railway company the bill of lading indorsed in blank, and demanded the flour, with which demand the company was unable to comply. The flour company then made a demand on the railway company for the value of the

car-load of flour, and endeavored to induce the latter to pay the claim, which it refused to do. Thereafter, in March, 1899, the flour company brought an action against plaintiff in error for the sum of $360.32 which it had paid the defendants in error for the flour, with interest. Afterward, on July 9, 1900, while the suit was pending, the railway company, on the advice of its counsel, settled with the flour company and paid the claim. Following this, the railway company made demand on Dale & Nessly and the Fourth National Bank for the said sum of money which it had paid to the flour company. The demand being rejected, this action was brought by the railway company against them in the court below on February 24, 1902. The above facts were set out in the petition. A general demurrer was sustained thereto, and the railway company has come here by proceedings in error.

The only question necessary to be considered is whether the action was barred by the statute of limitations. It appears from the petition that the flour was received at Atlanta between September, 1896, and December 6 of the same year. The railway company, at the request of the Southern Flour and Grain Company, which we will call the consignee, after the latter had paid for the property, stored it in a warehouse, where it remained for several weeks. The plaintiff in error was a bailee of, and responsible to, the owner (the flour company) therefor. (*Security Trust Co. v. Wells, Fargo & Co.*, 81 Hun, App. Div. 426, 80 N. Y. Supp. 830.) The railway company had such property rights in the flour that it might have recovered possession of it in an action of replevin.

Before December 6, 1896, the Dale & Nessly Milling Company and the Fourth National Bank, by an order on plaintiff in error, which the latter honored,

through inadvertence, forgetting that the flour was held by it for the true owner, induced the railway company to disregard the property rights of the flour company and its own obligation as bailee and caused it to deliver the flour to the brokerage company.

If a cause of action accrued to the railway company against defendants in error at that time, then this action, begun in February, 1902, was barred by the statute of limitations.   Counsel for plaintiff in error contend that the statute began to run from the time the railway company, in recognition of its liability, paid the flour company for the property, in July, 1900.  We do not think so.   It is a general rule that in cases of tort arising *quasi ex contractu* the statute commences to run from the date of the tort and not from the occurrence of the actual damage.   (Wood, Lim. 404.)

In this case the railway company, being a bailee of the property and having its possessory rights thereto invaded by the wrongful act of defendants in error, could then have brought an action against Dale and Nessly and the bank and recovered from them the value of the flour.   (3 A. & E. Encycl. of L., 2d ed., 761. [3.])   It chose, however, to wait until the owner of the property (the flour company) had sued it, and, after payment to such owner, brought this action to recover from defendants in error the amount so paid.   The liability of the railway company to the flour company when it delivered the latter's goods to another ought to have been as well known to it as it was later, when on the advice of counsel it compromised the suit brought by the flour company against it and paid to the rightful owner the value of the property.   The liability of the defendants in error to the railway company for their tortious act was subject to no condition, but was absolute when the wrong was committed.

Railway Co. v. Dale.

In *Pennsylvania Co. v. Chi. Mil. & St. P. Ry. Co.*, 144 Ill. 197, 33 N. E. 415, the latter company diverted a shipment of oil which was delivered to it by the Pennsylvania company, by reason of which the oil was damaged and lost. The owner of the property recovered its value from the Pennsylvania company, and the latter then sued the St. Paul company for the amount it was compelled to pay, occasioned by the latter's neglect and wrongful act. It was held that the statute of limitations began to run from the time that the St. Paul company diverted and lost the shipment, and not from the time the Pennsylvania company paid to the consignee the value thereof.

In *Morton v. City of Nevada*, 41 Fed. (C. C.) 582, bonds of a city were issued in violation of constitutional requirements which rendered them void. In an action by a purchaser of the bonds to recover the amount he had paid the city therefor, it was decided that the statute of limitations began to run when the money was paid, and not from the time when the bonds were adjudged to be void. The question is ably discussed in an opinion by Phillips, J. The case was affirmed by the circuit court of appeals in *Morton v. City of Nevada*, 52 Fed. 350, 3 C. C. A. 109. (See 19 A. & E. Encycl. of L., 2d ed., 194 [2] ; *Jones v. School District*, 26 Kan. 490.)

In all justice and equity, defendants in error should pay to the railway company the amount sued for. There is the strongest moral obligation on them to do so. We are confronted, however, with the insuperable obstacle of the statute of limitations invoked by them, which cuts out all consideration of the equitable features of the case.

The judgment of the court below will be affirmed.

All the Justices concurring.