JOHN NUVEEN & COMPANY v. CITY OF QUINCY.
156 So. 153.
Opinion Filed June 20, 1934.
Petition for Rehearing Denied July 26, 1934.

512

*Hugh M. Taylor,* for Plaintiff in Error;

*James Messer, Jr.,* and *W. J. Oven,* for Defendant in Error.

PER CURIAM.—On February 25, 1929, an action of assumpsit on common counts was brought against the City of Quincy.

A bill of particulars was filed as follows:

"Oct. 30, 1909, To Money paid by John
Nuveen & Company to City of Quincy
for bonds.................................................. $ 9,891.66
Interest at 8% from Oct. 30, 1909, to
Feb. 6, 1925, date of filing suit............. 12,081.01

Total ......................................................... $21,972.67
Less Interest Paid:
January 1st, 1910..................... $250.00
July 1st, 1910.............................. 250.00
January 1st, 1911..................... 250.00
July 1st, 1911............................. 250.00
January 1st, 1912..................... 250.00
July 1st, 1912............................. 250.00
January 1st, 1913..................... 250.00
July 1st, 1913............................. 250.00
January 1st, 1914..................... 250.00
July 1st, 1914............................. 250.00

Total interest paid................. $2,500.00 $ 2,500.00

Due February 6th, 1925........................... $19,472.67

"And plaintiff claims interest from the institution of suit
to date of judgment."

Demurrers to several pleas were sustained as were demurrers to replications to the second plea which had been held good on demurrer to the plea. The replications sought to avoid the second plea which interposed the three year statute of limitations. Such replications were legally insufficient to toll or to enlarge the statute of limitations which had barred the action before it was brought.

Trial was had upon pleas of never was indebted as alleged, and that the alleged cause of action did not accrue

within three years before this suit. A verdict for the defendant was directed and judgment entered thereon. Plaintiff took writ of error.

In 1909 the City of Quincy issued $80,000.00 of municipal bonds. Interest was paid on all the bonds for several years. In 1916 $70,000.00 of the bonds were held to be valid, but $10,000.00 of the bonds issued for school purposes were held to be invalid. Munroe v. Reeves, 71 Fla. 612, 71 So. 922 (1916). Later mandamus proceedings to compel payment of the bonds were quashed by this Court. State, *ex rel.* Nuveen v. Greer, 88 Fla. 249, 102 So. 739 (1924); 37 A. L. R. 1298.

At the trial John Nuveen testified for the plaintiff:

"I was doing business under the style of John Nuveen & Company. That has been the style of our firm since 1898. The interest on all of the $80,000.00 Dollars of bonds was paid until January 1, 1915. At that time we received a communication from the City stating that they were prevented from sending us the interest on all the bonds, the whole $80,000.00; including the $10,000.00 school bonds, because of a taxpayer's suit filed against the City of Quincy which prohibited them from sending us the interest. We were then paying agents. The bonds were payable in the Banking House of John Nuveen & Company. Now, with reference to these school bonds, the City did not pay any of the coupons on any of the $80,000.00 Dollars bonds on January 1, 1915, on July 1, 1915, on January 1, 1916, on July 1, 1916, and then on August 19, 1916, the City sent us funds to pay the interest for the interest periods covering the $70,000.00 bonds, but told us they were prevented from sending us the interest for the school bonds because of a taxpayer's suit which had been decided in favor of the taxpayer, but they did not at any time deny the obligation nor did they ever deny the obligation, until the year 1923."

On motion of counsel for the defendant the court struck the statement contained in the last clause in the above quoted testimony and stated to counsel for the plaintiff: "You may state for the record what you propose to prove." Mr. Taylor, counsel for the plaintiff, stated:

"We proffer to prove that the City of Quincy did not deny liability on the bonds here involved at any time prior to the institution of a mandamus suit in the Supreme Court in the year 1923, and that at all legal proceedings prior to that time in which the validity of these bonds was involved, the City of Quincy asserted and insisted upon their right to pay their bonds and never in judicial proceedings or otherwise, prior to the time of the mandamus proceedings aforesaid, denied its liability on these bonds according to their face and tenor and the face and tenor of the coupons thereto attached."

The court held that "at the time the plaintiff was put on notice and the time the Supreme Court decided these bonds were invalid, that his right of action to sue for money had and received accrued, and that within three years from that date the statute of limitations ran."

Plaintiff testified that on August 19, 1916, the city sent his company funds to pay the interest on $70,000.00 of the bonds, "but told us that they were prevented from sending us the interest for the school bonds because of a taxpayer's suit which had been decided in favor of the taxpayer." The Supreme Court of the State had on May 18, 1916, declared the $10,000.00 of school bonds to be invalid. Plaintiff testified that he was so advised by the city officials on August 19, 1916. This action was begun on February 25, 1925. Section 4229, 2589 C. G. L.

While the decree in the taxpayer's suit adjudicating the $10,000.00 of school bonds to be invalid, was not *res ad-*

*judicata* as to the plaintiff in this action, yet that suit in 1916 established the invalidity of the bonds and the plaintiff here was specifically advised of the result of the suit, by which a right of action, if any, for money had and received, accrued to the plaintiff in this action. There was no promise to pay as in Geer v. School District, 111 Fed. 682, and similar cases. Plaintiff brought mandamus in 1923 to compel payment of the bonds, upon theory that the bonds were valid; but the bonds were again in 1924 held to be invalid. Such mandamus action could not revive a right of action in assumpsit which had been barred by the statute of limitations.

It was not necessary for the city to expressly repudiate or to expressly deny liability on the bonds after they had been duly adjudged to be invalid. Plaintiff was advised by the City in August, 1916, that interest on the $10,000.00 school bonds would not be paid; and could have maintained an action in assumpsit when so advised; if not at the rendition of the decree of invalidity. See 37 C. J. 810, 812. The right of action having accrued when assumpsit could have been maintained, the statute of limitations had barred this action before it was brought. See Morton v. City of Nevada, 41 Fed. 582; 52 Fed. 350.

In State, *ex rel.* Nuveen v. Greer, 88 Fla. 249, text 255, 102 So. 739, this Court said mandamus would not lie to compel a tax levy and payment of the illegal bouds, but that the holder of the bonds could recover in an action at law, on appropriate common counts, the money paid for the bonds with interest *according to law,* citing cases.

Such expressions and others in the opinion had reference to abstract legal rights under the circumstances of the case, no question of the statute of limitations being involved or considered. The Court had no power to enlarge or to re-

vive the statute of limitations, and nothing in the opinion has any reference to, or bearing on, the subject of any statute of limitations. The mandamus action related to payment of the bonds, not to payment of money had and received.

Chapter 9057, Acts of 1921, merely empowers the City of Quincy to restore and repay the consideration it received for $10,000.00 school building bonds with interest; "and without restricting such payment to any particular fund or source, said city is especially empowered to make such repayment from the proceeds of any sale it may make of the school property acquired in part by the proceeds of the said bonds." The statute does no more than to authorize the city to restore a consideration it has received with interest thereon and to relieve the city of the legal duty to plead the statute of limitations in the premises. The city has pleaded the statute of limitations, and it is a defense to this action; but it leaves the obligation unsatisfied with statutory authority to repay the amount received with interest thereon. Section 3, Chapter 9892, Acts of 1923, does not change such situation.

Affirmed.

DAVIS, C. J., and WHITFIELD, TERRELL, BROWN and BUFORD, J. J., concur.

DAVIS, C. J. (concurring).—The injunction proceedings affirmed in Munroe v. Reeves, 71 Fla. 612, 71 Sou. Rep. 922, determined as of the date of affirmance of the decree in that case by the Supreme Court, that the bonds issued by the City of Quincy for school purposes were invalid for want of *power* to issue such bonds, not merely that the bonds were invalid because irregularly issued pursuant to a lawful power. Insofar as *statutory power* to issue bonds is concerned any judicial proceeding bringing the existence *vel*

*non* of the power into controversy becomes binding on any holder of bonds, because in every case the bondholder must assert the existence of statutory power in order to claim under the terms of the bonds themselves. In other words, *power* to issue bonds must have existed else the city could confer no title to the bonds on a purchaser of them, or upon an innocent holder claiming title under a purchaser. This being so, it necessarily follows that the bondholder's *title* to the bonds failed *eo instanti* it was definitely and finally determined by the courts in the Munroe v. Reeves proceeding in which the representatives of the City of Quincy were made the respondent parties, that the statutory authority (power) to issue bonds did not exist.

The bondholders are therefore themselves estopped by the decree rendered against the officials of the City of Quincy because of their contractual privity with officials who themselves are estopped by such decree. This is so because the *title* of bondholders can rise no higher in law than the title of those under whose official acts such bondholders must claim as purchasers or holders of bonds, and therefore whatever judicially affects the alleged *power* of the obligor to issue bonds in the first instance, necessarily becomes binding by operation of law upon the bondholders as privies to the obligor with respect to the alleged power, which is in contemplation of law the source of title, if any, the bondholders may have acquired to the bonds they hold. Sec. 15 R. C. L. par. 488.

Whatever right John Nuveen & Company ever acquired to sue the City of Quincy in assumpsit, must have arisen out of the doctrine of rescission, that is to say, out of John Nuveen & Company's right to rescind the transaction by which the void bonds were purchased from the city and to demand back the consideration that had been paid over

under the rescinded contract. This right of rescission arose when the *title* to the bonds was adjudged bad in Munroe v. Reeves, *supra,* in which case, although John Nuveen & Company was not a formal party defendant on the record, yet is bound by the result, because of the fact that it would have to trace whatever title it acquired to bonds, back to the city which was admittedly bound when its power to issue the bonds was judicially determined to be non-existent. Hence assumpsit must have been brought within three years from the accrual of the right to rescind which was when the bonds were declared void by this Court in Munroe v. Reeves, *supra.*

The true basis for the doctrine permitting courts to declare bonds void for want of statutory power to issue them, even when such bonds have passed into the hands of innocent holders, is that no *title* can ever pass to bonds where there is no *power* to issue, hence no person can ever become *in law* the innocent holder of void bonds, because to be a holder one must have derived his rights as such under some *title* that the issuing municipality could transmit to a purchaser by the negotiation and sale of the securities in the first instance. City of Sanford, Fla., v. Chase National Bank of City of New York, 50 Fed. (2d) 400.

I therefore concur in the holding that the cause of action in assumpsit was barred by the statute of limitations three years after the final decision in Munroe v. Reeves, 71 Fla. 612, 71 Sou. Rep. 922.

I think that the State has constitutional power to waive the statute of limitation that has run in favor of a municipality, but I am unable to read any such purpose into Chapter 9057, Acts of 1921, or Section 3 of Chapter 9892, Acts of 1923.

WHITFIELD, J., concurs.

## On Petition for Rehearing

Per Curiam.—A petition for rehearing filed for the plaintiff in error states that the Court apparently overlooked questions presented as to whether the statute of limitations is applicable to this action at law, in view of previous decisions (Munroe v. Reeves, 71 Fla. 612, 71 So. 922; State, ex rel. Nuveen v. Greer, 88 Fla. 249, 102 So. 739) and of the allegations of a replication designed to show a trust relation which would make the statute of limitations inapplicable to the action; and that the Court should interpret Chapter 9057, Acts of 1921, as being mandatory.

In the holding that "the right of action having accrued when assumpsit could have been maintained, the statute of limitations had barred this action before it was brought," and in other statements in the opinion, there was necessarily involved a determination that the statute of limitations was applicable as pleaded.

The replication referred to is as follows:

"Seventh: And for further replication to the second plea of the defendant, filed herein, the plaintiff says:

"That on or about the 30th day of October, 1909, this plaintiff bought of and from the defendant, the City of Quincy, $10,000.00 Dollars of par value of bonds of the said City of Quincy dated the first day of July, A. D. 1909, issued for the purpose of erecting school buildings and maintaining a system of public education in said municipality, and due on July 1st, A. D. 1949; that said bonds were purchased by the plaintiff in full and complete reliance upon the recital therein, that same were duly authorized by law and were the binding obligations of the City of Quincy, Florida; that this defendant paid the City of Quincy, the sum of $9,891.66 Dollars in cash for said bonds, which said money was actually received by the said City of Quincy,

the defendants herein; that the said bonds so purchased by the plaintiff from the defendant were and are null and void because issued by the City of Quincy in violation of an implied provision of the Constitution of the State of Florida, developed by judicial interpretation after the said issuance and sale of said bonds by the defendant to the plaintiff, and because for the reasons aforesaid, the statute enacted by the Legislature of the State of Florida, expressly authorizing the issuance of said bonds and the statute enacted by the Legislature of the State of Florida expressly validating said bonds were likewise null, void and unconstitutional; that both parties to the said sale of said bonds, to-wit: the plaintiff and defendant, acted in good faith and relied upon the validity of said bonds and believed that said bonds were the valid and binding obligations of the City of Quincy; that the facts aforesaid in law constituted the defendant, the City of Quincy, the trustee of said funds for the defendant and said funds were held in trust by the defendant for the uses of the plaintiff; that the defendant used and spent said moneys paid by the plaintiff to the defendant for the purchase of said bonds for its own benefit and thereby as trustee became liable to the plaintiff for interest upon said moneys according to law; that the defendant, by reason of the facts aforesaid, is a bare or naked trustee of said moneys for the use of the plaintiff and the plaintiff is entitled to recover the same in this action; that by reason of the defendant being a trustee of said moneys and funds no statute of limitation can or does run against the plaintiff and in favor of the defendant on the plaintiff's cause of action to recover said money from the defendant under the laws of the State of Florida.

"WHEREFORE the plaintiff says that he is entitled to recover in this cause notwithstanding the lapse of time and

that the second plea of the defendant filed herein to the declaration of the plaintiff constitutes no defense or bar to the plaintiff's right of recovery by reason of the facts aforesaid."

Municipal bonds payable by taxation are issued only upon delegated authority and are binding contracts of the municipality representing its taxpayers only when the bonds are duly authorized by and are issued in accordance with controlling law. If municipal bonds are not authorized and issued in accordance with paramount law, they are illegal and void, and money paid for them does not raise a trust in favor of the purchaser, even if the money is used for an authorized municipal purpose.

A purchaser of municipal bonds which have not been duly adjudged to be in accord with the controlling law, takes them subject to a future adjudication as to the validity of the statute authorizing the issue, and as to the legal sufficiency of the record of the proceedings in issuing the bonds as well as to the legal effect of the contents of the bonds. Statements or recitals contained in municipal bonds to the effect that they are issued in full compliance with law, cannot affect the invalidity of such bonds when issued in violation of the Constitution of the State.

In this case there was no authorized purchase of property or sale of bonds by the city and no misapplication of the funds of the plaintiff. There was an intentional purchase of city bonds, the possible inherent or latent constitutional or fundamental infirmities of which bonds were in law conclusively presumed to be known to all parties, the bonds not having been adjudged to be valid under the Constitution; and the subsequent adjudication of their illegality does not operate to raise a trust out of the transaction in favor of the party who has paid for the bonds he intended

to buy, when the city cannot pay the bonds because forbidden to do so by the paramount law.

In Chapman v. County of Douglas, 107 U. S. 348, 2 Sup. Ct. 62, 27 L. Ed. 378, cited for plaintiff in error, there was a duly authorized purchase of land by the county, only the method of payment being unauthorized; and it was adjudged that the county should hold the title in trust until the land is paid for as authorized by law, or else the title to be reconveyed. Here municipal bonds were issued contrary to the Constitution, and consequently without any legally delegated authority, so the *entire transaction* was legally unauthorized and void, the parties being in law bound by the consequences thereof, so there was no predicate whatever upon which to base a trust relation. The purchaser received the bonds he intended to buy and paid what he intended to pay *for the bonds,* which could be legally issued only by duly delegated authority, the validity of which delegated authority being, as the purchaser was bound to show, contingent upon possible future adjudication. The city cannot legally be authorized to pay *the bonds.*

In Browder v. Da Costa, 91 Fla. 1, 109 So. 448, also cited for plaintiff in error, there was a trust relation of attorney and client between competent parties to the purchase of land, with no question of delegated authority legally conferred or of the legality of the transaction.

The consideration that should the bonds be adjudged to be illegal and void, the city may legally return the money it received for the bonds and used for a city purpose, does not create a trust against the city and in favor of those who bought city bonds which were issued and bought in good faith, but which in law are legally unauthorized and void because issued in violation of the Constitution, though the illegality was not known until the validity of the bonds was

duly put in issue and adjudicated, all parties being in law held to know that an adjudication of an issue of validity or invalidity is a legal condition on which all municipal bonds are issued.

A trust cannot be enforced by an action in common counts on an implied promise; though in such an action if duly instituted a judgment may be recovered for money which in conscience the defendant should not be allowed to retain. In this case no trust is shown and the action is at law on an alleged implied promise to return money paid for the purchase of municipal bonds which both parties supposed were valid. But both parties are in law held to know that the supposed validity of the bonds was subject to future judicial adjudication.

There was no intent to raise a trust and the law implies no trust in the purchase of municipal bonds afterwards held to be illegal and void, though the money paid may be returned if no provision of law is thereby violated.

The Act of 1921 intended merely to authorize a return of the money paid for the void bonds, and the intent of the enactment is the law.

This action of assumpsit in common counts was not begun within the time prescribed by the applicable statute of limitations, and there is no showing of a trust or other matter to exclude the operation of the statute of limitations to this case.

Rehearing denied.

WHITFIELD, TERRELL, BROWN and BUFORD, J. J., concur.

DAVIS, C. J., concurs in the result.